## SECURITIES & EXCHANGE COMMISSION v. CHINESE CONSOL. BENEV. ASS'N, Inc.

District Court, S. D. New York.

Aug. 26, 1940.

Chester T. Lane, Gen. Counsel for Securities and Exchange Commission, Christopher M. Jenks, and Hugh D. Wise, Jr., all of Washington, D. C., for Securities and Exchange Commission.

Chadbourne, Hunt, Jaeckel & Brown and Gerald B. O'Neill, all of New York City (William M. Chadbourne and John Holbrook, both of New York City, of counsel), for defendant.

HULBERT, District Judge.

These are cross motions by the respective parties for judgment on the pleadings.

The action was brought to enjoin and restrain the defendant from directly or indirectly

(a) Making use of any means or instruments for transportation or communication in interstate commerce or of the mails to sell, to attempt or offer to sell, or to attempt or offer to dispose of, certain securities issued by the Republic of China through the use or medium of any prospectus or otherwise;

(b) Carrying such securities or causing them to be carried through the mails or in interstate commerce, by any means or instruments of transportation for the purpose of sale or delivery after sale; unless and until a registration statement is in effect with the Securities and Exchange Commission as to such securities in accordance with the Securities Act of 1933, Section 5(a), 15 U.S.C.A. § 77e(a).

Since paragraphs II to XIX, inclusive, of the bill of complaint are admitted by the answer, they will be set forth as a statement of facts.

Jurisdiction is conferred on the Court by Section 22(a) of the Securities Act of 1933, 15 U.S.C. § 77v(a), 15 U.S.C.A. § 77v(a).

The Chinese Consolidated Benevolent Association is a corporation organized on March 10, 1890, under the laws of the State of New York and now has a membership of approximately 25,000 Chinese persons. The principal offices of the Association are located at 16 Mott Street in the City of New York.

On September 1, 1937, the government of the Republic of China authorized the issuance of five hundred million dollars worth of bonds known as 4% Liberty Bonds of the 26th year of the Republic of China, hereinafter referred to as Liberty Bonds. Subsequently, on May 1, 1938, the government of the Republic of China authorized the issuance of fifty million dollars worth of 5% United States Dollar Bonds, hereinafter referred to as Dollar Bonds.

Since the authorization of these bonds they have been bought by persons who reside in the cities of Seattle, Washington; San Francisco, California; Portland, Oregon; Philadelphia, Pennsylvania; and other cities throughout the country, such purchases in a great many instances having been made through the facilities of Chinese organizations in those cities.

There has never been in effect a registration statement as to either issue of bonds pursuant to the Securities Act of 1933 and unless this Court finds that the acts of defendant herein constitute the defendant an underwriter of such bonds, there has been no underwriter of either issue in New York, Connecticut, or New Jersey.

On October 8, 1937, one month after the issuance of the Liberty Bonds, the Chinese Consolidated Benevolent Association, defendant herein, organized a committee composed of seven men and known as the "General Relief Fund Committee" (hereinafter referred to as the Committee). This Committee today is composed of ten men and has its headquarters at 47 Mott Street, New York City.

All the members of the Committee are Chinese and all reside in the City of New York. Neither the Committee nor any of its members has any official or contractual connection with the government of the Republic of China or any branch thereof.

The purposes for which the Committee was formed were as follows:

(a) To unite the Chinese community and the various organizations and societies thereof in aiding the Chinese people and the government of China in their difficulties and to bring about concerted efforts toward that end.

(b) To inform the Chinese people in New York as to the true state of affairs in China, to correct misrepresentation as to such conditions and affairs and to combat misinformation and false propaganda.

(c) To solicit and receive funds from members of the Chinese communities in New York, New Jersey, and Connecticut and from the general public in those states, for transmittal to China for general relief purposes.

In promoting the purposes for which it was organized, the Committee has, from time to time, held mass meetings at which information has been given out as to conditions in China; and has made reports as to the results accomplished by the Committee and as to the amounts of money received by the Committee for transmittal to China. Through the medium of such mass meetings and by means of advertisements inserted in newspapers (which newspapers were sent through the mails) and by personal appeals, the Committee and its members and agents have urged the members of Chinese communities in New York, New Jersey, and Connecticut to purchase Liberty Bonds and Dollar Bonds and have offered to accept funds from prospective purchasers of bonds for delivery to the Bank of China in New York as agents of the said prospective purchasers.

At the request of and for the convenience of individuals desiring to purchase such bonds, the Committee has received funds from such individuals and has delivered all of such funds to the Bank of China, New York Agency, 40 Wall Street, New York City, for the account of the respective individuals from whom such funds were received. Since its formation the Committee has delivered to the Bank of China, New York Agency, on behalf of purchasers of bonds over $600,000. In each case, the Committee has delivered to the person from whom the funds were received, a receipt. Such receipts were written in Chinese and an English translation thereof is annexed to the complaint as Exhibit A.

In delivering to the Bank of China, New York Agency, the sums received by the Committee for various individuals, the Committee has in every case delivered such sums for the account of the individual desiring to make the purchase and has filed an application on behalf of the purchaser, in either of the forms annexed to the complaint as exhibits B and C, depending upon which type of Bond was to be purchased.

In connection with each delivery for the individual purchaser, the Committee has also obtained from the Bank of China, New York Agency, receipts for all sums received by the Bank. Such receipts have either been in the form annexed to the complaint as Exhibit D for the Dollar Bonds, or Exhibit E for Liberty Bonds. Each receipt received by the Committee has contained the name of the individual purchaser.

Pursuant to the application of the individual purchaser, made personally or through the Committee, the Bank of China, New York Agency, has transmitted (through the mails) the funds received to an office of the Bank of China in China with instructions to obtain either Liberty Bonds or Dollar Bonds, as the case might be, for the account of the individual purchaser, and upon receipt of such bonds, has delivered them to the individual purchaser as his name and address appeared on the Bank's receipt.

The address given by the individual purchasers has, in some instances been care of the Association and in each such instance, upon the receipt of the bonds, the Bank of China, New York Agency, has sent the bonds to the individual purchaser care of the Association at the Association's headquarters.

The Bank of China, New York Agency, acts solely as an agent in these transactions, and makes no solicitation of the purchase of bonds or for the business involved in transmitting the money for the purchase of such bonds.

In handling this business it is the practice of the Bank to use the mails to deliver bonds to such purchasers.

No charge is made by the Committee for its services in connection with receiving funds to be used for the purchase of bonds and all such funds are delivered by it to the Bank of China, New York Agency, for remittance to China.

The members of the Committee receive no compensation, either from the persons who transmit money or from the Bank of China or from the Chinese Government or any department or agency thereof or from any other source in connection with its activities.

It seems unnecessary to extend the length of this opinion by setting forth the exhibits referred to since their purport is sufficiently indicated by the text of the statement of facts.

It is the plaintiff's contention that by the acts and practices thus described the defendant has been and is now an underwriter of the securities involved and, to the extent set forth, has been and is now selling said securities, and in the sale thereof has been and is now directly or indirectly using the mails and instruments of transportation and communication in interstate commerce, and has been and is now directly or indirectly causing said securities to be carried through the mails and in interstate commerce by means and instruments of transportation for the purpose of sale and delivery after sale.

The provisions of Section 5(a) of the Act are applicable unless the transactions come within the exemptions set forth in Section 4(1) which, so far as material, read:

"Sec. 4. The provisions of section 5 [77e] shall not apply to any of the following transactions:

"(1) Transactions by any person other than an issuer, underwriter, or dealer." 15 U.S.C.A. § 77d(1).

It is not claimed that the defendant is either an issuer or a dealer, but the plaintiff asserts that the defendant is an underwriter.

The term "underwriter" is defined in Section 2(11) of the Act to mean "any person who has purchased from an issuer with a view to, or sells for an issuer in connection with, the distribution of any security, or participates or has a direct or indirect participation in any such undertaking, or participates or has a participation in the direct or indirect underwriting of any such undertaking; * * *." 15 U.S.C.A. § 77b(11).

The language is broad and comprehensive, but upon the foregoing statement of facts it cannot be successfully urged that the defendant "purchased from an issuer with a view to * * * the distribution of any security."

The described activities of the defendant clearly establish that defendant made no contract of sale and no distribution of a security.

Thus the question boils down to this: Did the defendant "sell" the security and, if so, for the issuer?

It should be emphasized here that the defendant had no contractual relation with the Republic of China. It is stated on page 4 of the brief submitted on behalf of the Commission: "In soliciting the purchase which action is a 'sale' within the terms of the Act, there is no agency relationship."

Section 2(3) of the Act defines the terms "sale", "sell", "offer to sell" or "offer for sale" to include "every contract of sale or disposition of, attempt or offer to dispose of, *or solicitation of an offer to buy,* a security or interest in a security, for value." (*Underscoring* mine for emphasis). 15 U.S.C.A. § 77b(3).

The defendant's participation was that of a voluntary charitable organization appealing to the humanitarian instincts and endeavoring to arouse the patriotic fervor of its members, through the medium of newspaper advertisements and mass meetings, to buy bonds of the Chinese Republic and thereby aid their fatherland in its defense in an undeclared war being waged by Japan. The defendant received, and in some instances, assisted in filling out, the subscriptions and delivered them, accompanied by the required funds, to the Bank of China, New York Agency, which accepted and transmitted the subscriptions to and received the bonds from the issuer direct and made the distribution to the purchasers.

The defendant simply acted for its members more effectively than they might have done for themselves with a saving of their labor and loss of time. Is the defendant more amenable to the provisions of the Act than its individual members for whom it acted?

■ The words "attempt or offer to dispose of" a security connote authority from the issuer to consummate the transaction, and in an effort to bring the defendant within that phase of the definition set forth in Section 2(3) of the Act the Commission begs the question in its reply brief.

In the Matter of Canusa Gold Mines, Ltd., 2 S.E.C. 548, a broker received part of the purchase price of each share of stock for a stockholder, allegedly with notice thereof to, and the acquiescence of the issuer, whose agent he was held to be. Counsel for the Commission, referring to that case, say in its reply brief: "The Commission in its opinion refers to the firm as 'an agent for the registrant', but the term 'agent' was obviously not used in a technical sense, but rather to indicate that the firm was acting for the benefit of the registrant. In the same sense this defendant is the agent of the Chinese Government (although previously conceding no agency relationship) since its activities are acquiesced in and the benefits (over $600,000) accepted by that Government. In any event, the facts with respect to the agency relationship are the same in this case as in that and the conclusion of the Commission there was that the firm was an underwriter.".

Upon this improper assumption it is urged that the Commission has heretofore construed the meaning of the term "underwriter" and has held that this defendant is an underwriter within that determination, therefore, upon the principle enunciated in Securities and Exchange Commission v. Associated Gas & Electric Company, 2 Cir., 99 F.2d 795, the plaintiff's contention in this case should be sustained. In the examination of a later decision of the Securities and Exchange Commission (Matter of Reiter-Foster Oil Company, S.E.C. Release 2201) it is interesting to note that the Commission, referring to the possibility of increased payments to be received by one Ache, stated: "But even if this monetary incentive were not present we would be constrained to hold that Ache was an underwriter."

■ The plaintiff's argument is not persuasive, and I hold that the defendant is not an underwriter and did not sell for the issuer.

■ It is further insisted by the plaintiff, however, that if defendant is not deemed to be an underwriter, that the exemption under Section 4(1) of the act is of no avail, because the Republic of China has not complied with the act.

Section 6, Title 15 U.S.C. § 77f, 15 U.S. C.A. § 77f, provides: " * * * in case the issuer is a foreign or Territorial person by its duly authorized representative in the United States; except that when such registration statement relates to a security issued by a foreign government, or political subdivision thereof, it need be signed only by the underwriter of such security."

Since the defendant is not an underwriter or an agent it has no authority to do so. The Republic of China is, of course, officially represented in the United States, but it does not appear whether "its authorized representative" has ever been requested to file a registration statement. (No attempted backdoor entrance to this Court can be permitted to compel such a result; the channels of diplomacy are open through the Department of State.)

The Commission contends, however, for a doctrine of elasticity in construing the language of the act which it asserts Congress made intentionally broad because it was impossible to foretell the many ramifications which might be involved in the issue of securities to the public, and it must be recognized that the Congressional intention is to give effect to substance and not to form. Securities and Exchange Commission v. Universal Service Association, 7 Cir., 1939, 106 F.2d 232, 237.

■ It is the duty of the Congress within its Constitutional powers, which it cannot delegate, to determine policies and authorize administrative bodies to adopt rules and regulations within recognized limitations. Art. 1, Sections 1 and 8, United States Constitution; Panama Refining Co. v. Ryan, 293 U.S. 388, 55 S.Ct. 241, 79 L. Ed. 446; Schechter Poultry Corp. v. United States, 295 U.S. 495, at page 530, 55 S. Ct. 837, 79 L.Ed. 1570, 97 A.L.R. 947.

The provisions of the Act here involved are clear and free from ambiguity; all persons except issuers, underwriters and dealers are excluded. It would do violence

to the Act itself to further limit the exemptions as defined in Sec. 4(1).

Defendant is entitled to the statutory exemptions and the motion of the plaintiff must be denied and that of the defendant granted.